(69 Misc. Rep. 514.)

### In re SCUTELLA'S ESTATE.

(Surrogate's Court, Cattaraugus County. November, 1910.)

1. EXECUTORS AND ADMINISTRATORS (§ 24*)—RIGHT TO ADMINISTER ESTATES OF ALIENS—"INTERVENE"—"CONFORMABLY WITH THE LAWS OF THE COUNTRY."

    Under the treaties between the United States and Italy, its consular officers enjoy the rights accorded to the "most favored nation" in respect of the administration of the estates of Italian subjects dying in the United States, who have no known heirs or testamentary executors designated by them. Article 9 of the treaty between the United States and the Argentine Republic (10 Stat. 1009) commonly understood to be the most favored nation in respect to such matter, provides that, if any citizen of either party shall die without will in any territory of the other, the consul general or consul of the nation in which decedent belonged, or his representative in his absence, shall have the right "to intervene in the possession, administration and judicial liquidation of the estate of the decedent conformably with the laws of the country for the benefit of the creditors and legal heirs." *Held* that, under such provision, an Italian consul is entitled to notice of all judicial proceedings relating to the effects of an Italian subject so dying in the United States, and to intervene in such proceedings as the representative of foreign creditors, heirs. and next of kin, but has no absolute and exclusive right to letters of administration without bonds or security; such construction being in accordance with the legal significance of the term "intervene," which signifies "to come in" or "to come between," the right to intervene in judicial proceedings being a right to be heard with others who may be similarly situated, and the phrase "conformably with the laws of the country" showing a design of extending to the estate of the alien the same protection as was provided for in administration of the estates of citizens.

    [Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 24.*

    For other definitions, see Words and Phrases, vol. 4, p. 3731; vol. 2, p. 1428.]

2. TREATIES (§ 8*)—CONSTRUCTION.

    In construing treaties, the same general rules will be adopted which are applicable in the construction of statutes, contracts, and written instruments generally, to carry out the intent of the maker. and they must be liberally construed to procure perpetual amity. so far as can be done without the sacrifice of individual rights or the principles of personal liberty, lying at the foundation of jurisprudence.

    [Ed. Note.—For other cases, see Treaties, Cent. Dig. § 8; Dec. Dig. § 8.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. TREATIES (§ 11*)—FORCE AND EFFECT.
　　When treaty provisions conflict with laws or the Constitution of any state, the former must prevail.
　　[Ed. Note.—For other cases, see Treaties, Cent. Dig. § 11; Dec. Dig. § 11.*]

Proceedings for settlement of the estate of Frank Scutella. Application for letters of administration. Application granted.

Nevins & Black, for petitioner.

Lanza & Miceli, for Italian consul.

DAVIE, S.　Scutella died at Olean, Cattaraugus county, July 15, 1910.　At the time of his death he was a subject of the kingdom of Italy, where he left him surviving next of kin, but having no heir at law or next of kin in the United States.　A petition for administration upon his estate is filed by a resident creditor of the decedent, which alleges that decedent died intestate, that he owned no real estate and that his personal effects exceed the sum of $50, and that no right of action exists, granted by special provision of law, "except against the Pennsylvania Railroad Company for negligently killing the decedent."　The evident necessity for administration was to procure the requisite authority for prosecuting such claim.　A citation was duly issued, directed to and properly served upon the Italian consul, who appears in this proceeding, objects to the appointment of the petitioner, and asks that administration be granted to him without filing any bond, basing his right to administration upon the provisions of the treaty between the United States and Italy, which is more particularly hereinafter referred to.　Hence the determination of this controversy involves the necessity of carefully considering the phraseology of the treaty and the evident purposes sought to be subserved thereby.　The portions of the treaty bearing upon this proposition are articles IX, XVI, and XVII (20 Stat. 728, 732).

Article IX is as follows:

"Consuls general, consuls, vice consuls and consular agents may have recourse to the authorities of the respective countries within their district, whether federal or local, judicial or executive, for the purpose of complaining of any infraction of the treaties or conventions existing between the United States and Italy, as also in order to defend the rights and interests of their countrymen.　If the complaint should not be satisfactorily redressed the consular officers aforesaid, in the absence of a diplomatic agent of their country, may apply directly to the government of the country where they reside."

Article XVI is as follows:

"In case of the death of a citizen of the United States in Italy, or an Italian citizen in the United States, who has no known heir. or testamentary executor designated by him, the competent local authorities shall give notice of the fact to the consuls or consular agents of the nation to which the decedent belonged to the end that information may be at once transmitted to the parties interested."

Article XVII is as follows:

"The respective consuls general, consuls, vice consuls and consular agents as likewise the consular chancellors, secretaries, clerks, or attachés, shall

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

enjoy in both countries all the rights, prerogatives, immunities and privileges which are or may hereafter be granted to the officers of the same grade, of the most favored nation."

It is commonly understood that, under the provisions of the treaty between the United States and the Argentine Republic, the last-named republic, for the purposes under consideration, is regarded as the "most favored nation."

Article IX of that treaty (10 Stat. 1009) is as follows:

"If any citizen of either of the two contracting parties shall die without will or testament, in any of the territories of the other, the consul general or consul of the nation to which the deceased belonged, or the representatives of such consul general or consul in his absence, shall have the right to intervene in the possession, administration and judicial liquidation of the estate of the deceased, conformably with the laws of the country, for the benefit of the creditors and legal heirs."

Accordingly, this controversy must be determined in the same manner as if article IX of the Argentine treaty had been incorporated in' and constituted a part of the treaty between the United States and Italy. What, then, is the actual meaning and legal effect and interpretation of article IX above quoted? When such meaning is ascertained it becomes a part of the supreme law of the land.

Article 2 of the Constitution of the United States provides that the President shall have the power, by and with the advice of the Senate, to make treaties, provided two-thirds of the senators present concur. Article 6 of the Constitution declares the legal status and effect of treaties when so consummated in the following terms:

"This Constitution and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land, and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

There can be no controversy or misunderstanding in relation to the actual status of treaty law, nor in regard to the general rules applicable to the construction of the same.

"In construing the language of treaties, the courts will adopt the same general rules which are applicable in the construction of statutes, contracts, and written instruments generally, in order to carry out the purpose and intention of the makers." 28 Am. & Eng. Ency. of Law, 488.

"As treaties are solemn engagements entered into between independent nations for the common advancement of their interests and the interests of civilization, and as their main object is not only to avoid war and secure lasting peace, but to promote a friendly feeling between the people of the two countries, they should be interpreted in the broad and liberal spirit which is calculated to make for the existence of a perpetual amity so far as can be done by one without the sacrifice of individual rights or the principles of personal liberty which lie at the foundation of jurisprudence." 28 Am. & Eng. Ency. of Law, 490.

Treaties are to be liberally construed. Shanks v. Dupont, 3 Pet. 242.[1] When treaty provisions conflict with the laws or Constitution of any state, the former must prevail. Matter of Parrott (C. C.) 1 Fed. 481; Hauenstein v. Lynham, 100 U. S. 483, 25 L. Ed. 628; United States v. Forty-Three Gallons of Whiskey, 93 U. S. 188, 197, 23 L. Ed. 846; Head Money Cases, 112 U. S. 580, 598, 5 Sup. Ct. 247, 28 L.

[1] 7 L. Ed. 666.

Ed. 798; Tellefsen v. Fee, 168 Mass. 188, 46 N. E. 562, 45 L. R. A. 481, 60 Am. St. Rep. 379.

These authorities do not indicate that any different rules of construction prevail when considering international treaties than in considering and construing contracts and legislative enactments. They are to be reasonably construed, not by ascertaining the technical meaning of any segregated word, phrase or sentence, but from the entire provision and the evident purposes sought to be subserved thereby. What then, is the effect to be given to the phraseology of the Argentine treaty:

"The consul general," etc., "shall have the right to intervene in the possession, administration and judicial liquidation of the estate of the deceased conformably with the laws of the country for the benefit of the creditors and legal heirs."

The best method of comprehending the scope of any legislative enactment or treaty provision is a correct understanding of the conditions prompting the same. What were the conditions, existing or anticipated, which led to the incorporation of the provision quoted in the treaty with the Argentine Republic? Evidently the knowledge that the subjects of one country, while temporarily sojourning in the other, might die there possessed of effects which, without authoritative supervision, might come into the possession of and be dissipated by irresponsible persons, and thereby lost to those legally entitled to the same. No other incentive or purpose can be suggested for such treaty provision. To effectuate such purpose it became necessary to designate some competent and responsible representative to protect the rights of foreign creditors, heirs and next of kin—a representative who should be entitled to notice of all judicial proceedings relating to such effects, and possess the further right to intervene, or become a party to such proceedings as the representative of such absentees. Such a method of procedure would secure to the subjects of the Argentine Republic precisely the same rights and protection in this particular as were extended to our own citizens. What more could be expected or desired? It certainly was not the design or intention of the treaty making powers that the subjects of one country should, through the instrumentality of the treaty provisions, derive superior right and advantages over the citizens of the other nation, but that they should be placed in the same or an equal position for the protection and distribution of the assets in which they were interested. Such construction would give to all parts of the provision quoted its natural and reasonable effect; it would not pervert the meaning of the term "intervene" which signifies "to come in" or "to come between" (Webster's Dict.); it would be strictly in accordance with the legal significance of the term "intervene," for the right to intervene in judicial proceedings is a right to be heard with others who may be similarly situated. Matter of Logiorato, 34 Misc. Rep. 31, 69 N. Y. Supp. 507.

The phraseology "conformably with the laws of the country" is exceedingly significant in this connection. In place of indicating a design to abrogate or supersede local legislation regarding administration, it shows a purpose and design of extending to the estate of the

alien who had died within the jurisdiction of our local courts the same protection as was provided for the administration of the estates of our own citizens. Nor do the words "intervene in possession" detract to any extent from the force of this conclusion, because it would be both necessary and proper for the foreign representative to intervene in the possession of such portion of the assets as were determined through the instrumentality of administration to belong to the absentees so represented.

If the construction contended for by the Italian consul were to prevail, disastrous results to our own citizens might ensue; for assuming that his right to administer is absolute and exclusive, that letters are issued to him without bond or security, and the assets all turned over to him, and he removes or sends the same outside the jurisdiction of our courts, what possible remedy or redress would a resident creditor have? A question similar to the one under consideration was passed upon by the Supreme Court of the state of Louisiana, in 1854, in Succession of Charles Thompson, 9 La. Ann. 96. In that case letters of administration had been granted, pursuant to the laws of the state of Louisiana, of the decedent's effects to the official curator. The petitioner was the vice-consul of the kingdom of Norway and Sweden; and, in his capacity as such consul, he claimed the right to take succession out of the hands of the administrator so appointed. He based such alleged right upon the general laws of nations, the laws of the United States, and, especially, upon the provisions of the treaty entered into between the United States and the kingdom of Norway and Sweden. The court in disposing of such controversy said:

"The rights claimed are incompatible with the sovereignty of the state, whose jurisdiction extends over the property of foreigners as well as citizens while within its limits. The disposition of the estates of foreigners has been made the subject of special legislation, and no treaty or law of the United States exists, which, as paramount law, confers any such right as is claimed by the petitioner; nor are we aware of any principle of the law of nations which would entitle the petitioner to call into question the authority of our laws on that subject."

In the English courts, the same question was considered in Aspinwall v. The Queen's Proctor, 2 Curt. 241, 244. In that case an application was made to the Prerogative Court of Canterbury by an American consul for administration upon the estate of an American who had died while temporarily sojourning in England, leaving property within the territorial jurisdiction of the English courts. The application was denied, and substantially the same conclusion reached as in the Louisiana case.

If it had been the design, in formulating the treaty provisions, to give the Italian consul or the other officials designated the first and exclusive right to administer, it would have been entirely practicable to have incorporated in the treaty a concise and unambiguous provision to that effect. In fact, in the treaty between the United States and Peru precisely that was done. That treaty provides that:

"In the absence of legal heirs or representatives the consul or vice consul of either party shall ex officio be the executor or administrator of the citizens of their nation who may die within their consular jurisdiction."

In this matter, however, the Italian consul does not predicate his demand upon the provisions of the Peruvian treaty, but, as already indicated, upon the provisions of the treaty with the Argentine Republic, regarding that nation as the "most favored nation" within the purview of the meaning of that expression as used in the treaty between the United States and Italy.

The conclusions reached in this matter are not based upon the same grounds nor prompted by the same considerations as those in the Louisiana case, viz., unwillingness to tolerate any infringement upon individual state rights, but upon the broader ground of the reasonable construction of the phraseology of the provisions of the treaty under consideration, having in view the purposes for which such treaty was made. Nor have I overlooked in the consideration of this matter the elaborate and lengthy opinion of the learned surrogate of Westchester county in Matter of Lobrasciano, 38 Misc. Rep. 415, 77 N. Y. Supp. 1040; but I am constrained to adopt the reasoning in Matter of Logiorato, 34 Misc. Rep. 31, 69 N. Y. Supp. 507.

A decree will accordingly be entered, granting administration to the petitioner, and directing the issuing of limited letters to him, and denying the application of the Italian consul for appointment.

Decreed accordingly.